Peter Costanzo, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, Kane Handle Company and Liberty Mutual Insurance Company, Insurance Carrier, Respondents.

Argued December 3, 1979, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*John M. Cleland,* with him *Woods, Baker & Cleland,* for petitioner.

*Harry K. Thomas,* with him *Knox, Graham, McLaughlin, Gornall and Sennett, Inc.,* for respondent.

OPINION BY JUDGE MENCER, February 7, 1980:

This is an appeal by Peter Costanzo (claimant) from an adverse decision of the Workmen's Compensation Appeal Board (Board) sustaining a referee's termination of claimant's benefits.

The claimant suffered an injury during the course of his employment with Kane Handle Company, on April 30, 1975, when he was struck in the chest by a wooden dowel expelled from a machine which he was operating. Claimant was paid total disability benefits, pursuant to his claim, from May 2, 1975 through February 8, 1976.

During the course of treatment, the claimant was diagnosed as having preexisting organic heart disease. This condition was of either rheumatic or congenital origin but, before the injury sustained on April 30, 1975, was placid and unmanifested clinically. The medical testimony here indicates that the blow to the chest aggravated this preexisting condition and caused the claimant's heart to fibrillate—to beat in a very rapid and irregular manner.

The fibrillation, in the presence of a preexisting deformed aortic valve in claimant's heart, presented a dangerous health situation requiring corrective sur-

gery. On September 9, 1975, Dr. George J. D'Angelo performed open heart surgery and replaced the defective valve. The claimant recovered from the surgery without incident.

During February 1976, the employer filed a petition for termination based on an affidavit of Dr. D'-Angelo that claimant's disability was no longer related to the blow to the chest but was solely due to pre-existing heart disease.

Following hearings on the employer's termination petition, the referee's determination was to terminate claimant's benefits as of February 9, 1976 since "the claimant's medical evidence does not affect [sic] a causal connection between the injury of April 30, 1975 and any disability the claimant now suffers." The referee's order of termination was appealed to the Board, and it affirmed the decision of the referee. This appeal followed and we affirm.

Our scope of review, where the burden of proof before the Board was on appellee, is limited to a determination of whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were unsupported by substantial evidence. *Locastro v. Workmen's Compensation Appeal Board*, 32 Pa. Commonwealth Ct. 390, 379 A.2d 668 (1977).

The claimant makes three arguments in support of his appeal here.

First: The employer did not present sufficiently definite and precise proof that the disabling fibrillation caused by the blow to claimant's chest on April 30, 1975 had ceased.

Although there is testimony in the record from Dr. Charles E. Cleland that the claimant continues to suffer from recurring fibrillation and that such recurrences are causally related to the injury suffered by claimant on April 30, 1975, there is also testimony

from Dr. D'Angelo that the disability the claimant had following surgery was the result of claimant's preexisting condition rather than the aggravation that occurred following the blow to the chest on April 30, 1975.[1] Thus, there is medical testimony which is con-

[1] Dr. D'Angelo testified, in part, as follows:

Q. Now I'm going to ask you to separate disability, if possible. We have a preexisting condition here that we know about that is gradually encroaching, and we know that the preexisting condition he had was in some way aggravated by this blow with the piece of wood. Thereafter, did there come a time when you felt that whatever disability was resulting, or whatever disability the man has now, did there come a time when you felt that he had reached a status quo, that whatever aggravation there was of the preexisting condition had subsided? A. Yes, after the surgery, after a period of convalescence I felt that Mr. Costanza could return to work, but at a lighter type of work. Q. All right, fine. Now, you say a lighter type of work; is this because of the preexisting condition, the aortic insufficiency and the aortic stenosis, or is that—do you recommend this as a result of any residual disability from the blow? Can you separate those medically? A. It's the result of the underlying aortic valve disease and the enlargement of the left ventricle. Q. I don't want to put words in your mouth, but the disability that he has now, as I understand it, would be the result of the preexisting condition rather than the aggravation that occurred by the blow on April 30th, is that a fair statement? A. Yes.

Dr. Cleland, claimant's medical witness, testified, in part, as follows:

BY MR. CLELAND [Attorney for Claimant]: Maybe we could again try to shorten this up by entering into a stipulation that we certainly stipulate that there was a pre-existing heart disease, whether congenital or rheumatic, as Doctor Lowe pointed out, is irrelevant. We agree there was a pre-existing heart disease and that in Doctor—well, I don't know that we need to get into this. We are not contesting whether it existed or didn't exist. BY THE WITNESS [Dr. Cleland]: Doctor D'Angelo had the heart in his hand and operated on it and he doesn't do operations for nothing but he thought it was serious enough to be repaired

flicting, and it is hornbook law that it was for the referee, as the factfinder, to judge credibility and determine the weight to be accorded the conflicting evidence.

The employer had the burden of proving claimant's disability had ceased and we must agree that the referee properly concluded that the employer had adduced substantial evidence at the hearings to meet its

and he did a very successful operation but it didn't stop the myocarditis which I believe was due to rheumatic fever and at the bottom of his persistent fibrillation. The valve is cured.

. . . .

Q. Now, I am curious as to exactly how many conditions the man had that pre-existed? A. Congenital heart disease. Q. When you speak of that—let's define that, you are speaking of closing of an aortic valve, aren't you? A. That is right. He was born that way with a small opening in his aortic valve and it makes extra work for the pump and it leaks back. Q. Now, what other conditions? A. The other condition is my theory that he had rheumatic disease when the rest of the kids in the family had it and that is the reason he has a persistent fibrillation because rheumatic disease affects the heart muscle and the conduction system and the blow on the chest doesn't.

. . . .

Q. Do you agree with Doctor Lowe when he states that fibrillation by itself causes no damage? A. Well, if you characterize the etiology of the fibrillation or etiology of the damage. I think the damage came from previously existing muscle damage. I don't know whether I can answer it to suit you or not. Q. To paraphrase, Doctor Lowe said fibrillation is when the electrical hook up of the heart goes wrong as far as the sinus rhythm but that once fibrillation stops there is no permanent damage caused by the fibrillation. Do you agree with that? A. Oh, yes. This is elementary, sir. Q. Once the fibrillation is terminated, the heart goes back to whatever condition it was before? A. That is right. It is like a truck on two cylinders. Q. And all of a sudden, it picks up that fourth or sixth cylinder? A. That is right and it runs along until it happens again.

burden. The evidence of Dr. D'Angelo supports the referee's conclusion that the disability caused by the blow to claimant's chest on April 30, 1975 had ceased.

Second: The referee and the Board both were guilty of an abuse of discretion in refusing to undertake an additional medical examination of the claimant.

Unfortunately for the claimant, the issue has been ruled upon contrary to his contention here. We held in *Imperial Food Products v. Tomarelli,* 28 Pa. Commonwealth Ct. 150, 367 A.2d 732 (1977), that the authority of a referee or the Board to appoint an impartial medical witness when there is a conflict in the medical testimony is clearly a discretionary authority. Consequently, the failure to exercise that discretion does not constitute reversible error where, as here, the referee and the Board chose to base their decisions on the testimony of one of the medical witnesses. *Workmen's Compensation Appeal Board v. Jones & Laughlin Steel Corp.,* 22 Pa. Commonwealth Ct. 469, 349 A.2d 793 (1975).

Third: The employer failed to establish a sufficient improvement in the claimant's "earning power" to justify the termination of his total disability benefits.

We must have in mind that the termination of compensation benefits in this case was ordered on the basis that claimant's present physical condition is causally related to a heart condition with a congenital or rheumatic origin and is not causally related to his work-related injury of April 30, 1975. Therefore, we must conclude that, where the employer establishes that a claimant's medical problems causally relate to a preexisting condition and where the employer presents evidence that the claimant no longer suffers a disability causally related to the work-related injury, the referee may terminate benefits without regard to the

question of earning power. *Locastro v. Workmen's Compensation Appeal Board, supra.* When it is established that claimant suffers a partial disability related to his work-related injury and is unable to return to his previous employment, the employer has the burden of proving available employment within the claimant's existing physical capacity. Then surfaces the relevant question as to whether a loss of earning power is related to the work-related injury. *Barrett v. Otis Elevator Co.,* 431 Pa. 446, 246 A.2d 668 (1968).

Accordingly, for the reasons set forth above, the decision of the Board sustaining the order of the referee is affirmed.

ORDER

AND Now, this 7th day of February, 1980, the appeal of Peter Costanzo is hereby dismissed, and the order of the Workmen's Compensation Appeal Board, dated December 14, 1978, is affirmed.

Judge DiSALLE did not participate in the decision in this case.